IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DISINTERMEDIATION SERVICES, INC.<br><br>Plaintiff,<br><br>v.<br><br>CARVANA, LLC<br><br>Defendant. | Case No. 2:25-cv-771<br><br>COMPLAINT FOR PATENT INFRINGEMENT AND JURY TRIAL DEMANDED |

## COMPLAINT

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, against Defendant Carvana, LLC ("Carvana" or "Defendant") that relates to four U.S. patents owned by Plaintiff Disintermediation Services, Inc. ("DSI" or "Plaintiff"): 11,240,183, 11,336,597, 11,349,787, and 11,855,937 (collectively, the "Patents-in-Suit").

## PARTIES

1. Plaintiff Disintermediation Services, Inc. is a Delaware corporation with a principal place of business at 3300 Dallas Parkway, Suite 200, Plano, TX, 75093.

2. Upon information and belief, Defendant Carvana, LLC is an Arizona corporation with its listed principal place of business being 300 E. Rio Salado Parkway, Building 1, Tempe, AZ, 85281. Upon information and belief, Carvana's registered agent for service of process in the State of Texas is Corporation Service Company located at 211 E. 7th Street, Suite 620, Austin, TX, 78701.

3. Carvana maintains and has maintained regular and established places of business located in Texas and in this District. This includes Carvana's "Car Vending Machine" located at

5252 State Highway 121, Frisco, TX, 75034.

4. Carvana conducts business in Texas and offers products or services, through its infringing chat system, to customers located in Texas, including in this District, and introduces the infringing chat system knowing that it could be accessed by customers in this District and elsewhere in the United States.

5. Carvana has and continues to operate websites, such as https://www.carvana.com/, which enables access to the infringing chat system.

## JURISDICTION AND VENUE

6. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., and more particularly 35 U.S.C. § 271.

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a), in which the district courts have original and exclusive jurisdiction of any civil action for patent infringement.

8. Carvana is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute because (i) Carvana has and continues to conduct business in Texas; (ii) Carvana, during the course of conducting business in Texas, has committed acts of patent infringement including, making, using, offering to sell, selling, and/or importing infringing instrumentalities that give rise to this action by Carvana's performance of the methods of the claims of the Patents-in-Suit and its use and/or provision of products and systems that practice the claims of the Patents-in-Suit;  and (3) Carvana is registered to do business in Texas.

9. Venue pursuant to 28 U.S.C. § 1400(b) is proper because Carvana operates throughout this District and the State of Texas via its website www.carvana.com and its mobile application, Carvana, both of which incorporate the infringing chat system.  In addition, Carvana

operates approximately 40 physical locations where it sells cars through iconic glass-fronted towers that Carvana calls "vending machines." Six of these vending machines are located in Texas, including one in this District at 5252 State Highway 121, Frisco, TX, 75034.

10. Carvana's vending machines are staffed by Carvana employees who prepare and deliver used cars to customers. A LinkedIn search, for example, shows an "on-site" job opening at Carvana's Frisco location, including a lot attendant. (Source: https://www.linkedin.com/jobs/view/4255861186).



11. Thus, at least via the Frisco, TX vending machine, Carvana has a regular and established place of business in this District.

12. Furthermore, venue is proper because Carvana has committed acts of infringement within the district.

**DISINTERMEDIATION SERVICES, INC. AND INVENTOR BACKGROUND**

13. DSI was founded by John Patrick Dandison, Paul Schottland, and James Johnson, who are the inventors of the Patents-in-Suit.

14. The Patents-in-Suit originate from the work done by DSI in building its web chat services software that supports omnichannel electronic communications.

15. DSI's software included numerous technological improvements that were captured in a family of patent applications. The Patents-In-Suit issued from this family of patent applications

("Patents-In-Suit Family").

16. The technologies claimed by the Patents-in-Suit Family have been sold as software, including on DSI's website, https://www.isavailable.com/.

17. Since launching, DSI's software has handled over 1 million chat messages.

18. DSI built implementations of its software products on both Amazon Web Services and Microsoft Azure.

19. DSI obtained the Patents-in-Suit via assignment directly from the inventors.

20. Co-inventor John Patrick Dandison has worked in the software development field, including at Microsoft, Bank of America, and Skanska. Mr. Dandison was not employed by Microsoft when he invented the Patents-in-Suit. Microsoft does not have rights to the Patents-in-Suit.

21. Co-inventor Paul Schottland is the CEO of DSI. For the last ten years, Paul has also worked as a Vice President of Engineering at many leading software development technology companies. Paul had previously worked at Microsoft for over a decade. Paul has a B.A. degree from the University of the South, and a J.D. from Samford University. Mr. Schottland was not employed by Microsoft when he invented the Patents-in-Suit. Microsoft does not have rights to the Patents-in-Suit.

22. Co-inventor James Johnson practices law, with a focus on bankruptcy and healthcare fraud cases. James has a BS degree from Auburn University, and a J.D. from Samford University.

## OVERVIEW OF THE PATENTS-IN-SUIT

23. DSI is the owner and assignee of each of U.S. Patent Nos. 11,240,183 ("the '183 Patent," attached as Exhibit 1), 11,336,597 ("the '597 Patent," attached as Exhibit 2), 11,349,787

("the '787 Patent," attached as Exhibit 3), and 11,855,937 ("the '937 Patent," attached as Exhibit 4).

24. The Patents-in-Suit are all related to each other as part of the Patents-In-Suit Family. All of the Patents-in-Suit claim priority back to the October 17, 2011 filing date of U.S. Provisional Application No. 61/627,714.

25. DSI has the exclusive right to sue and the exclusive right to recover damages for infringement of the Patents-in-Suit during all relevant time periods.

26. On February 1, 2022, the '183 Patent, entitled "Two-way real time communication system that allows asymmetric participation in conversations across multiple electronic platforms," was duly and legally issued by the USPTO.

27. On May 17, 2022, the '597 Patent, entitled "Two-way real time communication system that allows asymmetric participation in conversations across multiple electronic platforms" was duly and legally issued by the USPTO.

28. On May 31, 2022, the '787 Patent, entitled "Two-way real time communication system that allows asymmetric participation in conversations across multiple electronic platforms" was duly and legally issued by the USPTO.

29. On December 26, 2023, the '937 Patent, entitled "Two-way real time communication system that allows asymmetric participation in conversations across multiple electronic platforms" was duly and legally issued by the USPTO.

30. The technologies disclosed and claimed in the '183, '597, '787, and '937 Patents were not well understood, routine, or conventional at the time of their invention. To the contrary, the technologies claimed in these patents were ahead of the state of the art at the time of the invention.

31. To date, no court has found any claims in the Patents-In-Suit Family as being directed to patent ineligible material under 35 U.S.C. § 101. Judge Sunil R. Harjani of the U.S. District Court for the Northern District of Illinois rejected a motion to dismiss challenging the patent eligibility of the Patents-in-Suit. *Disintermediation Services, Inc. v. LiveAdmins, LLC*, Case No. 22 C 6539, 2024 WL 2209709 (N.D. Ill. May 16, 2024) ("Plaintiff has alleged that the Patents in Suit address a technological problem and involve an inventive concept. Thus, the Court cannot conclude that the Patents in Suit are invalid pursuant to 35 U.S.C. § 101 on a motion to dismiss."), attached as Exhibit 5.

32. The Patents-in-Suit claim improved systems and methods for communication over the Internet, which enable unauthenticated users to communicate using a web browser. *See* Ex. 1, Claim 1 (citations to language of the '183 Patent are representative and apply to the other Patents-in-Suit unless specifically noted otherwise).

33. One benefit of the claims is that "[n]o common software is required for the participants in the discussion (for example, each party does not need to be a subscriber to a common service)." Ex. 1, at 4:60-63.

34. Another benefit of some claims is that users "do not need to share a common real-time communication protocol, medium, []or software; since the sourcing, routing, and exchanging of questions and answers to the parties is handled by the server." Ex. 1, 5:9-13.

35. The Patents-in-Suit address a problem rooted in technology, such as how a web browser uses the Hypertext Transfer Protocol ("HTTP") to communicate over a network with a server. *See* Ex. 1, 4:49-55; 7:56-59; and 9:12-14; Ex. 5 at *3-4 ("The inability to remember or order a conversation is unique to computers. Here, the statelessness problem arises from using a specific technology (web browsers) to communicate. The Patents in Suit aid in solving this unique

technological problem . . . . Plaintiff has alleged that the Patents in Suit address a technological problem . . . .").

36. At the time of the Patents-in-Suit's invention, HTTP would have been known to a person of ordinary skill in the art ("POSITA"), such as developers of tools for communicating via a network such as the Internet.

37. A POSITA would, at the time of the Patents-in-Suit's invention, understand that HTTP is a stateless protocol and there is no persistent connection between a client and a server when using HTTP. This fact is recited in a number of prior art references that appear on the face of Patents-in-Suit. *E.g.*, US Patent No. 5,961,601, attached as Exhibit 6, at 2:24-29 ("HTTP is an example of a stateless protocol, which means that every request from a client to a server is treated independently. The server has no record of previous connections."); US Patent No. 7,222,363, attached as Exhibit 7, at 2:17-20 ("[S]uch connections are not persistent, as HTTP is really a connect-and-release protocol wherein a client makes a co[nn]ection to the server, sends a request, waits f[o]r a response, and then disconnects.").

38. The fact that HTTP is a stateless protocol presented a problem in the prior art related to network communication tools such as internet chat. Namely, when using HTTP to communicate between a client and a server, the server does not maintain a history or knowledge of previous connections. This problem would have been understood by a POSITA and is addressed by a number of references that are prior art to the Patents-in-Suit. *E.g.*, Ex. 6 at 7:32-34 ("All requests for URL's are stateless. Even if a client requests a page multiple times, the server doesn't maintain any history or knowledge of previous connections.").

39. Previous solutions to providing some state to a series of related HTTP connections include using via Flash, Java, ActiveX, or web plugins to establish persistent connections. *E.g.*,

US Patent No. 7,958,453, attached as Exhibit 8, at 10:25-29; US Publication No. 2010/0037153, attached as Exhibit 9, at [0025].

40. Other prior art systems required users to login prior to communicating with others. Once logged in, a web server is able to determine the identification of users, thereby, allowing relevant state to be provided. *E.g.*, US Patent No. 8,412,785, attached as Ex. 10, at 14:19-23 ("users have to log in to the instant messenger network before they can communicate with each other through the browser."); US Patent No. 7,639,672, attached as Exhibit 11, at 1:26-28 ("Stated differently, to communicate using [instant messaging] IM, both users must obtain a special IM program and both must prearrange to communicate over IM by exchanging IM addresses.").

41. Another solution to the stateless problem was to save the conversation locally on a user's computer. *E.g.*, US Patent No. 8,725,813, attached as Exhibit 12, at 2:48-52 ("[IM] messages may be stored in any structure within client 102 . . . .").

42. The Patents-in-Suit describe an alternate solution to the problem caused by HTTP being stateless. The claims of the Patents-in-Suit allow an unauthenticated or unidentified user (e.g., a user that has not provided login credentials) to use a web browser (e.g., not special chat software and without requiring a persistent connection) to communicate via internet chat without requiring local storage on the user's computer or transmission of the entire conversation to the server. *E.g.*, Ex. at Claim 1.

43. Instead of prior art solutions, the Patents-in-Suit utilize an inventive concept to achieve state by using a conversation identifier to map messages within a conversation. Ex.1 at Abstract, FIG. 3, 2:33-36; Ex. 5 at *4. This improved process eliminates the need for a persistent connection and/or common or specialized chat software/devices, reduces the amount of storage needed on the user's computer, eliminates the redundant storing of the conversation, and reduces

the amount of data transmitted over a network compared to alternative solutions.

44. In addition to using a stateless protocol, the improved technologies claimed in the Patents-in-Suit allows communication by unauthenticated users. Users of the claimed invention can communicate without having to create an account or provide identifying information. As described in the specification, the claims allow unauthenticated users to use the claimed invention without being required to provide "their name, e-mail address, phone number, home address, or any other identifying information." Ex. 1 at 3:25-28; 3:52-54; 4:8-9; 5:5-9; 5:46-50 and 6:4-5.

45. A POSITA, after reading the disclosure of the Patents-in-Suit, would understand that instant messaging software at the time of the invention typically worked by sending authentication information to a server. The server would use the authentication information to verify the user prior to providing access to the instant messaging service. *See* Ex. 1 at 1:58-67.

46. A POSITA at the time of the invention would have recognized that requiring registration or personal information was an impediment for users. US Patent No. 8,738,739, attached as Exhibit 13, at 1:42-46 ("One reason is users are often distracted or confused when interacting with websites. Distractions can be caused by interruptions or simply by rushing or simply a change in expectation, i.e. registration to the website is required. For example, social networking sites typically require registration.").

47. POSITAs at the time of the invention would also recognize there was a risk to users sharing their personal information. See Ex. 11, at 1:44-47 ("Typically, use of chat requires the divulgation of an email address to unknown users, who can use the email address for unwanted spamming, unwanted contact, etc.").

48. The claims of the Patents-in-Suit address this problem in the art by claiming improvements that allow an unauthenticated or unidentified user to communicate without being

required to provide identifying information. By mapping messages within a conversation by using a conversation identifier instead of personal information, the claims permit a user to communicate via internet chat without logging into account or providing other personal information. Indeed, a user of the claimed invention can communicate via internet chat while remaining anonymous to the server.

49.  Each of the claims of the Patents-in-Suit provide a specific solution to the problems in the art, namely, mapping messages within a conversation using a conversation identifier. *E.g.*, Ex. 1 at Abstract. As such, the claims of the Patent-in-Suit do not preempt all ways of communicating via the internet. Ex. 5, at *4 ("Likewise here, the Patents in Suit do not appear to preempt all ways of organizing internet communications but focus on situations with unauthorized users of web browsers where conversation identifiers assist in mapping the communications.").

50.  For example, there are myriad ways to engage in internet chat other than through the claimed invention. A system that requires the user to be identified or authenticated, such as by providing an email address, phone number, or login and password, fall outside of the claim scope based on the claims' requirement of an "unauthenticated user." Additionally, a system that utilizes a standalone application to perform the internet messaging function would not meet the claimed limitation requiring the use of a web browser.

51.  The number of forward citations for the Patents-in-Suit Family reveal that the Patents-In-Suit Family and its claimed inventions are directed to specific methods and systems for an improved communication architecture. The claimed technologies allow for users to seamlessly communicate with one or more responders across a variety of communication modes. They do not merely disclose or claim an aspiration or result of the technologies that would preempt further use of and/or innovation in communication architectures.

## CARVANA'S KNOWLEDGE OF THE PATENTS-IN-SUIT AND CONTINUED INFRINGEMENT DESPITE THAT KNOWLEDGE

52. On January 3, 2024, counsel for DSI sent, via USPS, a package to Paul Breaux, Defendant's General Counsel. This package (the "Carvana Notice Package") was addressed to Mr. Breaux at Carvana's listed principal place of business at 300 E. Rio Salado Parkway, Tempe, AZ, 85281.

53. The Carvana Notice Package contained a letter and claim charts (which are the same as those filed with the complaint) for the Patents-in-Suit that informed Carvana of DSI's patents (including the Patents-in-Suit). The Carvana Notice Package further explained how Carvana's chat system on its websites (such as https://www.carvana.com/) infringed the '183 Patent, the '597 Patent, the '787 Patent and the '937 Patent. A copy of the Carvana Notice Package's letter is attached as Exhibit 14.

54. On information and belief, the Carvana Notice Package was delivered on January 6, 2024 to the above address of Carvana's listed principal place of business, where it was signed and received by, on information and belief, a Carvana employee.

55. While Carvana did not ignore the Carvana Notice Package, Carvana did not enter into an agreement to license the Patents-in-Suit.

56. On February 4, 2025, thirteen months after the Carvana Notice Package was sent, counsel for DSI asked Carvana for an update. As of the date of this filing, Carvana does not have a license to the Patents-in-Suit.

57. This Complaint serves as additional notice for the '183, '597, '787 and '937 Patents as well as the manner in which they are infringed. Despite having knowledge of the '183, '597, '787, and '937 Patents and the manner in which they are infringed since at least January 6, 2024, Carvana has continued to infringe the '183, '597, '787, and '937 Patents literally

and directly.

## COUNT I: PATENT INFRINGEMENT

58.     DSI reasserts and realleges all preceding paragraphs of this Complaint as though set forth fully here.

59.     Carvana infringes at least the following thirteen claims ("Infringed Claim(s)") of the Patents-in-Suit under 35 U.S.C. § 271:

| **U.S. Patent Number** | **Infringed Claims** |
|---|---|
| 11,240,183 | 1, 3, 4, 5, 16, and 17 |
| 11,336,597 | 18 and 20 |
| 11,349,787 | 17, 18, and 19 |
| 11,855,937 | 18 and 20 |

60.     Attached hereto as Exhibit 15 and incorporated into this complaint as alleged herein are claim charts setting forth, as non-limiting examples, wherein each and every limitation of the Infringed Claims of the Patents-in-Suit are found in Carvana's infringing chat system. On information and belief, the identified functionalities were present in the infringing instrumentalities during the relevant times of infringement.

61.     The claims charts within Exhibit 15 are illustrative examples of Carvana's infringement of the Infringed Claims of the Patents-in-Suit. DSI reserves the right to identify additional infringed claims or instances of infringement in accordance with the Court's local rules and applicable scheduling orders. DSI further reserves the right to identify additional types of patent infringement committed by Carvana.

62.     Carvana has had notice of the '183, '597, '787 and '937 Patents and the manner in which they are infringed since at least January 6, 2024.

63. Carvana has and continues to use each and every limitation of the infringing chat system that meets each and every limitation of the Infringed Claims of the Patents-in-Suit.

64. As a direct and proximate result of Carvana's acts of patent infringement, DSI has been and continues to be injured, and has sustained and will continue to sustain damages.

## WILLFUL INFRINGEMENT

65. Carvana has infringed and continues to infringe at least the above Infringed Claims despite its knowledge of the '183, '597, '787, and '937 Patents and the manner in which they are infringed since at least January 6, 2024.

66. After being informed of its infringement, Carvana has neither ceased infringing the patents nor secured rights from DSI for its infringement. Carvana's infringement is willful and deliberate.

67. Carvana's infringement of the Patents-in-Suit is willful and deliberate, entitling DSI to enhanced damages under 35 U.S.C. § 284.

68. Carvana's willful infringement and unwillingness to enter into a patent license agreement with DSI make this an exceptional case such that DSI should be entitled to recover its attorneys' fees and costs incurred in relation to this matter pursuant to 35 U.S.C. § 285.

## JURY DEMAND

DSI demands a trial by jury on all issues that may be so tried.

## PRAYER FOR RELIEF

WHEREFORE, DSI requests that this Court enter judgment in its favor and against Carvana as follows:

A. Adjudging, finding, and declaring that Carvana has infringed at least the above thirteen Infringed Claims of the Patents-in-Suit under 35 U.S.C. § 271;

B. Awarding the past and future damages arising out of Carvana's infringement of the Patents-in-Suit to DSI in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C. Adjudging, finding, and declaring that Carvana's infringement is willful and awarding enhanced damages and fees to DSI as a result of that willfulness under 35 U.S.C. § 284;

D. Adjudging, finding, and declaring that this an "exceptional" case pursuant to 35 U.S.C. § 285;

E. Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 and 285, or as otherwise permitted by law; and

F. Granting DSI such other relief as is just and proper, or as the Court deems appropriate.

Dated: August 8, 2025

Respectfully submitted,

By: /s/ *David P. Berten*

David P. Berten
(IL Bar # 6200898, *also admitted in ED Texas*)
Alison Aubry Richards
(IL Bar # 6285669, *also admitted in ED Texas*)
Michael Healy
(IL Bar # 6345633, also admitted in ED Texas)

Global IP Law Group, LLC
55 W. Monroe St., Ste. 3400
Chicago, Illinois 60603
Phone: 312.241.1500
dberten@giplg.com
arichards@giplg.com
mhealy@giplg.com

*Attorneys for Plaintiff Disintermediation Services Inc.*